Shane P. Coleman
Emily J. Cross
Daniel W. Beierwaltes
COLEMAN, MONSON & SMALL PLLC
1555 Campus Way, Suite 201
Billings, MT 59102
Telephone: 406.656.6551
shane@montanabusinesslaw.com
emily@montanabusinesslaw.com
daniel@montanabusinesslaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| DC MONTANA HOLDINGS, LLC<br><br>Plaintiff,<br><br>v.<br><br>TROY & TINA SAMS, LLC d/b/a TROPHIES WEST OUTFITTERS,<br><br>Defendant. | Case No. **CV-26-64-BLG-TJC**<br>Judge: ________________<br><br>**COMPLAINT** |

Plaintiff DC Montana Holdings, LLC, for its Complaint against the named Defendant, states and alleges as follows:

**PARTIES**

1. Plaintiff DC Montana Holdings, LLC ("DC Montana") is a Delaware limited liability company with operations in Big Horn and Rosebud Counties, Montana, specializing in land and wildlife management. Its sole members, David

Watts and Crystal Watts, are residents and citizens of Texas. DC Montana is a Texas citizen by virtue of the citizenship of its sole members.

2. Defendant Troy & Tina Sams, LLC d/b/a Trophies West Outfitters ("Trophies West") is a Montana limited liability company with its principal place of business in Rosebud County, Montana. Its sole members, Troy and Tina Sams, are residents and citizens of Montana. Trophies West is a Montana citizen by virtue of the citizenship of its sole members.

## JURISDICTION & VENUE

3. Jurisdiction is properly before this Court pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff will suffer damages in excess of $75,000 if Defendants are allowed to pursue planned operations, and Plaintiff seeks monetary damages in excess of $75,000.

4. The venue of this matter is properly placed in Montana and in the Billings Division pursuant to 28 U.S.C. § 1391 because the transaction and real property giving rise to this dispute respectively occurred in and is located in Rosebud County, Montana.

5. By this Complaint, Plaintiff is exclusively seeking declarations of law from this Court that extinguish Defendant's claims to certain real property and to seek monetary damages from Defendants, as set forth below. However, Plaintiff is

*not* seeking to enjoin or stop the conveyance of the property described below, which is subject to a Buy-Sell Agreement between Plaintiff and others, set for closing on August 24, 2026.

## ALLEGATIONS COMMON TO ALL COUNTS

6. On April 23, 2026, DC Montana entered into a Buy-Sell Agreement (the "Agreement") with Heal Holdings LLC ("Heal Holdings") and Diamond Cross Ranch Management LLC ("DCR Management"), to purchase certain real property located in Rosebud and Bighorn Counties, colloquially referred to in the Agreement as the Diamond Cross Ranch (the "Ranch"). A true and correct redacted portion of the Agreement is attached hereto as **Exhibit 1**. A true, complete, and correct copy of the legal description of the Ranch is attached hereto as **Exhibit 2**.

7. Heal Holdings is a Delaware registered limited liability company authorized to do business in Montana with a principal place of business in Belgium, with one member/manager, Charlotte DeMevius.

8. Heal Holdings is the record title owner of the Ranch.

9. DCR Management is a Delaware limited liability company authorized to do business in Montana with a principal place of business in Belgium, with one member/manager, Charlotte DeMevius.

10. Upon information and belief, DCR Management is the entity that is primarily responsible for managing operations at the Ranch, but it is not a record title holder of the real property that comprises the Ranch.

11. In pertinent part, the April 23, 2026, Agreement requires the termination of any hunting leases on the Ranch by the August 24, 2026, closing date. *See* **Ex. 1**, at p. 6 ("*any and all existing hunting agreements and/or leases shall terminate immediately upon a successful closing of this transaction*").

12. As of April 23, 2026, there were no hunting leases recorded against the Ranch, and DC Montana is in all things a bona fide purchaser as defined by Montana law.

13. Even though no hunting leases were recorded against the Ranch at the time the Agreement was signed, Defendant claims to have reached a deal with someone via an alleged hunting lease contract dated January 17, 2026 (the "Alleged Contract"). A true, complete, and correct copy of the Alleged Contract is attached hereto as **Exhibit 3**.

14. The Alleged Contract was drafted solely and exclusively by Troy Sams on behalf of Defendant, and neither Heal Holdings nor DCR Management participated in the drafting of the Alleged Contract.

15. The Alleged Contract is addressed to "Diamond Cross Ranch," but "Diamond Cross Ranch" is neither a legal entity registered in the State of Montana

nor the owner of the real property that comprises the Ranch. The Alleged Contract was signed only by Andrew Anderson, as "*representative of Diamond Cross Ranch*." *See* **Exhibit 3**.

16. The Alleged Contract was neither addressed to nor signed by Heal Holdings or DCR Management. However, these are the precise two entities that signed the Buy-Sell Agreement as "Seller" in April 2026. Clearly, "Seller" knows the entity that holds title to the Ranch is Heal Holdings, and the entity that manages the Ranch is Diamond Cross Ranch Management. Accordingly, if Heal Holdings or DCR Management desired to encumber the Ranch with a legal obligation—knowing that Diamond Cross Ranch is a non-entity—the Alleged Contract would not have been signed by a "representative of Diamond Cross Ranch."

17. Mr. Anderson did not sign as a representative, owner, member, or officer of Heal Holdings or DCR Management, nor was Mr. Anderson authorized by Heal Holdings or DCR Management to sign this Alleged Contract on behalf of either Heal Holdings or DCR Management. He signed only as a "representative" of a non-legal entity referred to as Diamond Cross Ranch.

18. Despite the legal deficiencies of the Alleged Contract, Defendants conducted turkey hunts on the Ranch in April and early May 2026. Plaintiff did not know about these hunts at the time, and Plaintiff had never seen the Alleged

Contract when Defendants conducted these hunts. As shown below, these hunts were carried out in violation of the Alleged Contract's terms and conditions.

19. On or about May 4, 2026, Defendant sent a false and misleading report (the "May 4th Communication") concerning the recent turkey hunts to Austin Marchant, an employee and resident of the Ranch, acknowledging the understanding that the Ranch "has changed ownership" and expressing concern that Defendant be allowed to hunt through December 31, 2026. A true, complete, and correct copy of that report is attached hereto as **Exhibit 4**. Neither Defendant, nor Mr. Marchant, nor Seller sent the May 4th Communication to Plaintiff.

20. Knowing the Ranch had sold or was about to be sold, and fully aware that they had already violated the Alleged Agreement, Defendants unilaterally attempted to add new terms and conditions to the Alleged Contract by way of the May 4th Communication. These new terms and conditions materially alter the original terms and conditions of the Alleged Contract. Defendant did not send the May 4th Communication to Heal Holdings or DCR Management, and the new terms and conditions were not approved by an authorized representative of Heal Holdings or DCR Management, or anyone else for that matter. The May 4th Communication was directed solely to Austin Marchant, who is not a representative, owner, member, or officer of Heal Holdings or DCR Management. Mr. Marchant did not issue a written response to the May 4th Communication.

21. The following day, on or about May 5, 2026, Plaintiff received a copy of the Alleged Contract for the first time through a DropBox link provided by Seller. Plaintiff had not seen the Alleged Contract prior to May 5, 2026, did not know about Defendants' recent hunts on the Ranch, and had no knowledge of the May 4th Communication.

22. At some point after May 4, 2026, Defendants apparently became worried about the enforceability of the Alleged Contract and their failure to properly record the Alleged Contract. So, Defendant embarked upon a desperate attempt to remedy these problems, and on June 17, 2026, a certain Verification of Hunting Lease Contract (the "Verification") was recorded with the Rosebud and Big Horn County Clerk and Recorders Offices, as document nos. 0132548 and 374677, respectively. True and correct copies of the recorded Verification are attached hereto as **Exhibit 5**.

23. Interestingly, the Verification's introductory language refers to a hunting lease contract in which Heal Holdings is a party. However, as evidenced by the Alleged Contract itself, Heal Holdings is not a party to the Alleged Contract. *See* **Exhibit 3**. The Alleged Contract is addressed to "Diamond Cross Ranch" (only) and signed by a "representative of Diamond Cross Ranch" (only). There is little doubt that Defendants were trying to cure multiple deficiencies by improperly referencing Heal Holdings and totally disregarding "Diamond Cross Ranch."

24. On information and belief, Defendants fraudulently procured this Verification from Andrew H. Anderson, and this Verification is therefore voidable pursuant to Montana statute.

25. To compound the problems with Defendant's misguided and fraudulent schemes, the Verification purports to include an "Exhibit B," which is a description of real property supposedly encompassed by the Alleged Contract. However, Exhibit B was never a part of the Alleged Contract and, in fact, is not referenced in the Alleged Contract at all. This constitutes fraud and is another obvious attempt by Defendants to bootstrap the Alleged Contract, which on its face, does not meet the minimum requirements of the Statute of Frauds.

26. Finally, the Verification is not actually "verified" by Heal Holdings at all (which was presumably the primary goal of Defendants' scheme). Instead, the Notarial Certificate clearly and unambiguously states that Mr. Anderson's signature is an "*Acknowledgement In An Individual Capacity*." *See* **Exhibit 5**. So, rather than cure defects in the Alleged Contract, this Verification only serves to highlight Defendants' hapless efforts and fraud.

27. For all of these reasons, the "Verification" filed on June 17, 2026 (five months after the Alleged Contract was signed) is of no legal force and effect and should be disregarded in its entirety.

28. Plaintiff anticipates that, contemporaneously with this filing, Heal Holdings (as current owner of the Ranch), DCR Management (as Ranch manager), and DC Montana (as equitable titleholder of the Ranch by virtue of the executed April 23, 2026 Buy-Sell Agreement) will serve Outfitter with a Notice of Termination, terminating the Alleged Contract based on various breaches outlined herein.

## <u>COUNT 1 - DECLARATORY JUDGMENT</u>
### THE ALLEGED CONTRACT IS NOT ENFORCEABLE

29. DC Montana incorporates the allegations in the preceding paragraphs as though set forth fully herein.

30. An actual and justiciable controversy exists between Plaintiff and Defendant concerning their respective rights, duties, obligations, and legal relations under the Alleged Contract and Verification, for at least the following reasons.

31. First, because the Alleged Contract was never entered into by Heal Holdings or DCR Management (collectively "Seller"), the Alleged Contract does not bind Seller and, therefore, could not possibly bind Plaintiff.

32. Second, even if Heal Holdings or DCR Management had entered into the Alleged Contract, it lacks essential terms, including but not limited to:

a. The Alleged Contract fails to provide specific legal descriptions as to the designated property covered by the alleged agreement.

Specifically, the Alleged Contract only references "29 Diamond Cross Rand Lane, Birney, MT 59012," which is not a sufficient description and does not meet Montana's minimum requirements pursuant to the Statute of Frauds;

b. The June 2026 Verification purports to include an Exhibit B, which provides certain legal descriptions. However, Exhibit B is not referenced in the Alleged Contract nor attached to the Alleged Contract, and it cannot be added later to bootstrap this deficiency. Because Exhibit B was never part of the original agreement, the Alleged Contract fails pursuant to the Statute of Frauds;

c. The Alleged Contract also violates the Statute of Frauds because it was not signed by the record title holder of the real property in question—Heal Holdings—and the person who signed the Alleged Contract as representative of Diamond Cross Ranch—Andrew H. Anderson had no written authority to enter into such an agreement on behalf of Heal Holdings; and

d. The Alleged Contract fails to provide a specific number of total hunts Trophies West is permitted to guide on the Ranch and does not specify the consideration to be received by the Ranch for such additional hunts. Rather, these essential details are left to the sole

discretion of Defendants' self-described "honor system." Therefore, the Contract is hopelessly vague, ambiguous, and/or illusory, and therefore, of no force and effect.

33. Because Troy Sams was the sole author of the Alleged Contract and tendered the agreement on behalf of Defendant, all ambiguities are construed against Defendant and in favor of Plaintiff and Seller. Accordingly, these material defects render the Alleged Contract legally invalid, and therefore, unenforceable against Heal Holdings, DCR Management, and/or DC Montana**.**

34. Finally, even if the Alleged Contract had been entered into by Heal Holdings or DCR Management, and even if it did not lack essential terms, it has since been terminated by Heal Holdings (as current owner of the Ranch), DCR Management (as Ranch manager), and DC Montana (as equitable titleholder of the Ranch per the executed April 23, 2026, Buy-Sell Agreement) for the following reasons, among others:

a. **Failure to Notify Regarding Excess Game Harvesting:** Defendant failed to provide advance notice of the specifics concerning "the opportunity to add more income" before hunting and harvesting turkeys in excess of the specified limit of ten (10) turkeys. The determination regarding whether the excess hunts would be a net benefit to the Ranch was not Defendant's to make

alone. Defendant did not present the opportunity to anyone, but instead, unilaterally acted without consent and without giving anyone else a chance to agree or disagree with the decision to harvest this excess number of turkeys. This constitutes a breach of the Alleged Contract.

b. **Unilateral Pricing of Excess Game:** Defendant failed to provide advance notice of the specifics concerning "the opportunity to add more income" when, after the unauthorized harvesting of more than double the specified number of turkeys, Defendant unilaterally decided to pay the Ranch $250 per excess turkey harvested. This price was never discussed nor agreed upon and is not mentioned in the Alleged Contract. The determination regarding whether the excess hunts would be a net benefit to the Ranch was not Defendant's to make alone. Therefore, Defendant acted without consent and without giving Heal Holdings or DCR Management the opportunity to agree or disagree with the proposed price, which was never disclosed until after Defendant improperly harvested the excess number of turkeys.

c. **Fraudulent Representation of Harvest and Underpayment:** In May 2026, Defendant paid the Ranch $2,500 for a total of 10

turkeys allegedly harvested beyond the specified number. However, Defendant actually harvested 15 turkeys beyond the specified number. Therefore, Defendant fraudulently represented the hunts and deprived the Ranch of income.

d. **Unauthorized Plans for Elk Harvesting:** Defendant expressed an intention to harvest bull elk and cow elk far in excess of the specified numbers, which Defendant unilaterally determined without approval from Heal Holdings or DCR Management. Additionally, Defendant failed to negotiate and agree upon a price to compensate the Ranch for the excess elk harvested. The determination regarding whether these excess hunts will be a net benefit to the Ranch is not Defendant's to make alone. As stated above, Defendant already misrepresented the harvests at least once.

e. **Unauthorized Booking with Third-Party Agencies**: Defendant booked several, if not all, of the pending hunts through third-party sources without approval from Heal Holdings or DCR Management. The Alleged Contract does not contain any subletting or sublease provisions, nor does it give Defendant authorization to book hunts on the Ranch through third-party commercial outfitters.

f. **Failure to Provide Vehicle Identifications:** Defendant represented that, prior to any hunts on the Ranch, it would submit a list of all guide vehicle descriptions with plate numbers and Trophies West stickers on each vehicle/ATV as specified in the Alleged Contract. However, rather than fulfill this condition, Defendant entered and hunted the Ranch in April and May 2026 without complying with this essential requirement.

g. **Failure to Provide Proof of Insurance:** Defendant failed to provide proof of liability insurance as promised in the Alleged Contract, which is a clear breach and a violation of Montana law that requires an "outfitter shall have liability insurance, as a named insured, in effect at all times during the year." Mont. Admin. R. 24.171.509. The only "proof" provided by Defendant was a certificate for a commercial liability policy that expired on May 10, 2026, that did not list "Diamond Cross Ranch" as an additional insured.[1] Further, Defendant never provided any proof of automobile insurance, in violation both of the Alleged Contract and Montana law, which requires that coverage extend to bodily injury to clients at all times services are being provided. Although

[1] Incidentally, Outfitter named "Heal Holdings LLC" as the additional insured.

Defendant recently provided "proof" of a commercial liability policy that became effective June 24, 2026, this does not cure the breach nor is this sufficient under Montana law.

35. The controversy is definite and concrete, touches the legal relations of parties having adverse legal interests, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

36. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), this Court may declare the rights and other legal relations of the parties in a case of actual controversy within its jurisdiction. Further relief may be granted under 28 U.S.C. § 2202.

37. A judicial declaration is necessary and appropriate so that the parties may ascertain their respective rights and obligations and avoid continuing uncertainty and dispute.

38. For all the aforementioned reasons, DC Montana is entitled to an order from this Court declaring that the Alleged Contract and Verification are void and unenforceable.

## **COUNT 2 – SLANDER OF TITLE**

39. DC Montana incorporates the allegations in the preceding paragraphs as though set forth fully herein.

40. Defendant recorded a Verification of a legally invalid, personal license in June 2026, *after* Plaintiff entered into a binding Buy-Sell Agreement on April 23, 2026.

41. Defendant recorded the Verification with actual knowledge that Plaintiff had already entered into the April 23, 2026, Buy-Sell Agreement and in an effort to encumber DC Montana's title to the Ranch.

42. Moreover, upon information and belief, Defendant obtained the Verification by fraudulent means, and Seller intends to void the Verification and have it removed from public record.

43. Defendant acted with malice when it published these false statements.

44. Accordingly, as a direct and proximate result of Defendants' slanderous actions that cloud title, Plaintiff has incurred damages in an amount to be determined at trial.

## COUNT 3 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

45. DC Montana incorporates the allegations in the preceding paragraphs as though set forth fully herein.

46. The Buy-Sell Agreement is a valid and binding contract between Seller and Plaintiff.

47. Defendant had actual knowledge of the Buy-Sell Agreement.

48. Defendant intentionally and willfully recorded the invalid Verification in June 2026 knowing that DC Montana had already entered into a binding Buy-Sell Agreement.

49. Defendant's conduct is intended to cause Seller to violate the terms of the Buy-Sell Agreement by leaving the Ranch subject to an alleged hunting lease in direct contravention of the terms of the Buy-Sell Agreement, which requires that all hunting leases be terminated prior to the August 24, 2026 closing.

50. Furthermore, Defendant sent a Demand for Assurance dated July 6, 2026, in which it threatened litigation and expressed an intention to enter the Ranch after Plaintiff becomes the sole owner of the Ranch upon the anticipated August 24, 2026 closing. The contents of this letter evince that Defendant's acts are calculated to cause damage to DC Montana's business and enjoyment of the Ranch. A true, complete, and correct copy of the Demand for Assurance is attached hereto as **Exhibit 6**.

51. Defendant's conduct was done with the unlawful purpose of causing damage or loss without any right or justifiable cause on the part of Defendant.

52. As a direct and proximate cause of Defendant's conduct, DC Montana has incurred damages in an amount to be determined at trial.

**COUNT 4 – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

53. DC Montana incorporates the allegations in the preceding paragraphs as though set forth fully herein.

54. Since the Fall of 2025, Plaintiff had an expected business relationship or economic opportunity in the prospective purchase of the Ranch from Seller.

55. At all times relevant to the Complaint, Defendant knew about the Ranch sale discussions and the Buy-Sell Agreement when it was signed on April 23, 2026.

56. Defendant intentionally and willfully interfered with Plaintiff's prospective purchase of the Ranch by signing and recording the Alleged Contract and the Verification.

57. Defendant's actions were calculated to cause damage to the Plaintiff's business and prospective economic opportunity in purchasing the Ranch..

58. Defendant's conduct was done with the unlawful purpose of causing damage or loss without any right or justifiable cause on the part of Defendant.

59. As a direct and proximate cause of Defendant's conduct, DC Montana has incurred damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. For a judgment declaring the Alleged Contract and Verification is invalid and unenforceable against Plaintiff;

2. For an order directing that any instrument, notice, lien, claim, or other document recorded or filed by Defendant that clouds Plaintiff's title be canceled, released, expunged, or otherwise removed from the public records;

3. For an award of such further and necessary relief as authorized by 28 U.S.C. § 2202;

4. For an award of all actual and compensatory damages sustained by Plaintiff as a result of Defendant’s slander of title, including damages arising from the impairment of marketability, delay or loss of transactions, increased financing costs, lost profits or business opportunities where proven, and other consequential damages according to proof;

5. For an award of damages for Defendant's tortious interference with Plaintiff's existing and prospective business relationships, including lost business opportunities, lost profits, and other economic damages according to proof;

6. For an award of attorneys’ fees and costs of suit; and

7. For such other and further relief that the Court deems proper.

Dated this 21st day of July, 2026.

By: */s/ Emily J. Cross*

Emily J. Cross

COLEMAN, MONSON & SMALL PLLC

*Attorneys for Plaintiff*